**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHOKHRUKH NASIRKHODJAEV** ) | |
| The Address Hotel, Apt. 3802 ) | |
| Dubai Marina ) | |
| Dubai, United Arab Emirates ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 1:26-cv-2201 |
| v. ) | |
| ) | |
| **BRADLEY T. SMITH, in his official capacity as** ) | **COMPLAINT FOR** |
| **Director of the United States** ) | **DECLARATORY AND** |
| **Department of the Treasury,** ) | **INJUNCTIVE RELIEF** |
| **Office of Foreign Assets Control** ) | |
| 1500 Pennsylvania Avenue, NW ) | |
| Freedman's Bank Building ) | |
| Washington, D.C. 20220 ) | |
| ) | |
| *Defendant,* ) | |
| ) | |
| and ) | |
| ) | |
| **THE UNITED STATES DEPARTMENT** ) | |
| **OF THE TREASURY, OFFICE OF FOREIGN** ) | |
| **ASSETS CONTROL** ) | |
| 1500 Pennsylvania Avenue, NW ) | |
| Freedman's Bank Building ) | |
| Washington, D.C. 20220 ) | |
| ) | |
| *Defendant.* ) | |

Plaintiff Shokhrukh Olimdjonovich Nasirkhodjaev brings this Complaint to Compel Agency Action Unreasonably Delayed against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Bradley T. Smith, and in support of his Complaint alleges the following:

**INTRODUCTION**

1.      This is a civil action brought under the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1), to compel Defendants to issue a final determination on Plaintiff's Petition for Administrative Reconsideration ("Petition") of the economic sanctions Defendants imposed on him in 2023.

2.      Plaintiff is the former Chief Executive Officer ("CEO") of Hamriyah Steel FZC, a company located in the United Arab Emirates ("UAE"). On April 12, 2023, Defendant OFAC designated Plaintiff pursuant to Executive Order ("E.O.") 14024 in connection with his employment with Hamriyah Steel FZC, and added his name to the Specially Designated Nationals and Blocked Persons List ("SDN List") administered by Defendant OFAC.

3.      Following his designation, on February 26, 2024, Plaintiff resigned from his position with Hamriyah Steel FZC, thereby negating the basis for his designation and conforming his conduct to U.S. foreign policy objectives. Plaintiff informed Defendants of his resignation on April 5, 2024, via the filing of his Petition with Defendant OFAC. The Petition was filed pursuant to Defendant OFAC's procedures governing removal from the SDN List set forth in 31 C.F.R. § 501.807.

4.      Despite notifying Defendants of his resignation and the clear change in circumstances over two years ago—as well as providing responses to multiple rounds of questionnaires, filing supplemental submissions, and consistent follow up by Plaintiff's counsels––Defendants have failed to adjudicate the Petition; thereby, prolonging the harms Plaintiff and his family, including minor children, continue to suffer as a direct result of his designation. As such, this case presents the troubling spectacle of an agency punishing compliance.

5.      Defendant OFAC's own published guidance declares that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior". U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *Filing a Petition for Removal from an OFAC List*, https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list (last visited May 19, 2026).

6.      Plaintiff heard that message and acted on it. Following his designation, he resigned from the executive position that was the sole stated basis for his listing, relinquished his equity in Hamriyah Steel FZC without compensation, and notified OFAC of both steps. Indeed, Plaintiff did everything the regulatory regime contemplates a designated person should do to "negate the basis" of a designation under 31 C.F.R. § 501.807.

7.      Over two years after his Petition was filed, however, OFAC continues to respond with the same recycled assurances that the Petition is "receiving active attention" and that his "continued patience is appreciated." Patience, however, is not a remedy the APA requires a party to supply indefinitely, nor a luxury that Plaintiff and his family can continue to afford.

8.      Indeed, the cost of OFAC's silence falls not on Plaintiff alone but on his wife and three children. While OFAC has deliberated, the family faced an imminent threat of eviction from their Dubai apartment and its seizure by the Government of Dubai's Rental Disputes Center, as well as imminent repossession of the family vehicle, lost all access to banking facilities and health insurance for three children, and have survived on the dwindling charity of friends in the UAE and Uzbekistan. Further, Plaintiff lives under fear of arrest in the UAE for debts he is unable pay.

9.      None of this advances any coercive policy purpose—i.e., the behavioral change OFAC's own guidance describes was achieved over two years ago. As a result, what remains is an agency that will neither act nor explain its inaction, while a family no longer connected to any conduct OFAC sought to deter is destroyed indefinitely.

10.     This Court is not asked to decide whether Plaintiff belongs on the SDN List. It is asked only to direct OFAC to make the decision its own regulations contemplate. Accordingly, Plaintiff respectfully requests an order directing Defendants to issue a final determination on his Petition.

**JURISDICTION AND VENUE**

11.     This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

12.     This Court may grant the relief requested herein pursuant to 5 U.S.C. § 702, which waives the sovereign immunity of the United States for civil actions seeking relief other than money damages against a United States agency or officer acting in an official capacity. This Court may also grant relief pursuant to 5 U.S.C. § 706(1), which authorizes this Court to compel agency action unlawfully withheld or unreasonably delayed. Further, the Court may grant declaratory and further necessary relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

13.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e), as Defendants are officers and agencies of the United States residing in the District of Columbia, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

4

**THE PARTIES**

14.     Plaintiff Shokhrukh Olimdjonovich Nasirkhodjaev is a citizen of the Republic of Uzbekistan and is a lawful resident of the United Arab Emirates. Plaintiff was designated by Defendant OFAC as a Specially Designated National ("SDN") pursuant to E.O. 14024 on April 12, 2023 and he remains on the SDN List as of the date of this filing.

15.     Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes placing persons on and removing persons from the SDN List consistent with E.O. 14024 and the implementing regulations located at 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and "Russian Harmful Foreign Activities Sanctions Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff under E.O. 14024 and is responsible for adjudicating Plaintiff's Petition.

16.     Defendant Bradley T. Smith is the Director of OFAC. In this role, Director Smith is responsible for overseeing and directing OFAC's operations, including the adjudication of petitions for administrative reconsideration. Director Smith is sued in his official capacity.

**FACTUAL ALLEGATIONS**

**A.     Plaintiff's Designation Under E.O. 14024**

17.     On April 12, 2023, Defendant OFAC designated Plaintiff pursuant to section 1(a)(iii)(C) of E.O. 14024 for being or having been a leader, official, senior executive officer, or member of the board of directors of Hamriyah Steel FZC, an entity whose property and interests in property are blocked pursuant to E.O. 14024. *Notice of OFAC Sanctions Action*, 88 FED. REG. 32,281 (May 19, 2023); Press Release, U.S. Dep't of the Treasury, *Treasury Targets Russian*

*Financial Facilitators and Sanctions Evaders Around the World*, April 12, 2023, *available at*: https://home.treasury.gov/news/press-releases/jy1402. The press release announcing Plaintiff's designation stated only that he is the CEO of Hamriyah Steel FZC. *Id.*

18.    At the time of his designation, Plaintiff was the CEO of Hamriyah Steel FZC, having worked his way up through the company since 2010. On February 26, 2024, Plaintiff resigned from his position as the CEO of Hamriyah Steel FZC.

19.    Following his resignation, Plaintiff has not held any position or employment with Hamriyah Steel FZC nor with any other company, as his continued designation presents a significant obstacle to any employment opportunities.

20.    As a result of his designation, Plaintiff's name was added to the SDN List, and all property in which he has an interest that was or came within the United States is blocked. In addition, U.S. persons are prohibited from engaging in transactions or dealings with him absent an applicable statutory exemption or a license issued by Defendant OFAC. Moreover, foreign persons who engage in certain transactions or dealings with him are themselves exposed to a risk of designation under E.O. 14024, presenting a tangible impediment to the routine and ordinary transactions necessary to provide for his family's daily needs.

**B.    Plaintiff's April 5, 2024 Petition for Administrative Reconsideration**

21.    Defendant OFAC administers regulatory procedures by which persons designated pursuant to its regulations and identified on the SDN List may seek to have their sanctions lifted. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow interested parties to request reconsideration of their designations by arguing that there is an insufficient factual or legal basis for the designation; asserting that the circumstances resulting in the designation no longer apply; or proposing remedial measures that they believe would negate the basis of the designation, if

adopted. *Id*. Defendant OFAC's regulations provide examples for when the basis for designation may be negated, including "resignation of persons from positions in a blocked entity." *Id*.

22.    Defendant OFAC has also published guidance for persons seeking delisting. U.S. Dep't of the Treasury, Off. of Foreign Assets Control, *Filing a Petition for Removal from an OFAC List*, *available at*: https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list (last visited May 19, 2026). OFAC's guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. The guidance further identifies as examples of circumstances supporting removal that "the basis of [the] designation no longer exists." *Id*.

23.    On April 5, 2024, Plaintiff filed the Petition pursuant to Defendant OFAC's regulations at 31 C.F.R. § 501.807. Plaintiff's Petition explained that he had resigned from his position as the CEO of Hamriyah Steel FZC on February 26, 2024 and "as such, the stated reason for his designation no longer applies." Accordingly, Plaintiff's Petition asserted, consistent with Defendant OFAC's procedures, that his resignation constituted a change in circumstances sufficient to warrant his removal.

24.    Additionally, Plaintiff's Petition explained that he is a national of Uzbekistan, has never lived or worked in Russia, has never been involved in Russian politics, and has never participated or benefited from Russia's international actions. Therefore, Plaintiff's Petition argued, targeting Plaintiff is contrary to the goals of U.S. sanctions policy.

25.    Plaintiff's Petition consisted of a total of fifteen (15) pages, including the three (3) exhibits and cover pages. Defendant OFAC acknowledged receipt of the Petition and assigned it Case ID: RUSSIA-EO14024-37936.

### C.    First Questionnaire & Subsequent Communications

26.    On July 4, 2024, Defendant OFAC issued an eleven (11) question questionnaire ("First Questionnaire") seeking additional information regarding—among other things—Plaintiff's employment record, his resignation from Hamriyah Steel FZC, his ownership interests, sources of income, and his relationships with various Specially Designated Nationals ("SDNs") that OFAC links to Alisher Usmanov.

27.    Plaintiff responded to Defendant OFAC's First Questionnaire on November 1, 2024. Plaintiff's response was a total of sixteen (16) pages, including the two (2) exhibits and cover pages. Plaintiff's response stated that he "understands that U.S. sanctions are designed to prompt a change in behavior of the sanctioned individual, such that the basis of designation would no longer exist. Thus, [Plaintiff] took prompt steps to resign from his position at Hamriyah Steel FZC," as well as to fully divest his ownership interest in the Emirati company.

28.    Plaintiff's submission further explained that he "is currently unemployed and, with the exception of one company he has not been able to formally withdraw from due to sanctions, does not hold any positions including, without limitation, any business, volunteer, charitable, or political positions."

29.    The response also provided that Plaintiff "has not had any source of income since his designation. In light of his designation, securing new employment has not been feasible, including because his designation has made it impossible to receive a salary into a bank account. In regard to the personal expenses of [Plaintiff] and his family, they rely on their savings." Moreover, Plaintiff "has no active bank accounts as all bank accounts have been frozen or closed due to sanctions."

30.    Plaintiff's response further explained the financial pressure his designation was imposing on him, asserting that he "co-owns the apartment in Dubai that was purchased via a mortgage from HSBC UAE, in which [he and his spouse] live with their three children. Their bank has notified them that it is going to repossess the apartment based on the family's failure to make mortgage payments, a direct result of their bank[] accounts being closed due to sanctions." Plaintiff's response further described that he co-owned a plot of land where he had planned to build a family home, "but the construction was halted due to sanctions."

31.    On February 24, 2025, Plaintiff's legal counsel wrote a follow-up email to Defendant OFAC explaining that over three (3) months had passed since the submission of Plaintiff's First Questionnaire response and requesting an estimated timeline for the adjudication of his Petition. Defendant OFAC replied on February 25, 2025, stating: "[w]e understand that this matter is a priority and will reach out to you when we have future updates. Your continued patience is appreciated. Unfortunately, we are unable to provide a timeframe for final adjudication as unforeseen circumstances may arise that change this calculus. Rest assured, however, that your case is receiving active attention."

32.    On March 10, 2025, Plaintiff's counsel again reached out to Defendant OFAC, explaining that Plaintiff "continues to face tremendous economic hardship" because of his designation, including the "serious risk of defaulting on the mortgage on [his family] home." Moreover, Plaintiff's counsel explained that his "family has also been walled off from medical care in the UAE because they have been unable to procure insurance" as a result of Plaintiff's designation. Plaintiff's counsel also reiterated that the "record makes clear that [Plaintiff] was designated solely based on his prior position as CEO of Hamriyah Steel. As explained in detail . . . [Plaintiff] resigned from his position as the CEO over a year ago. There is no additional step he

could take to become compliant with US policy. His continued listing serves only to punish him for a role he no longer occupies." Accordingly, Plaintiff's counsel sought to receive a realistic timeline for adjudication or Plaintiff would consider bringing litigation to seek a final adjudication.

### D. Second Questionnaire & Subsequent Communications

33. On March 25, 2025, Defendant OFAC issued another questionnaire ("Second Questionnaire") seeking responses to four (4) questions regarding: (i) Plaintiff's divestment of shares in Hamriyah Steel FZC; (ii) his relationship with Hamriyah Steel FZC's owners; (iii) information on Hamriyah Steel FZC's relationship with Hamriyah Holdings Limited; and (iv) his efforts to resign from his directorship with Hamriyah Holdings Limited.

34. Plaintiff fully and transparently responded to the Second Questionnaire on June 23, 2025. Plaintiff's response consisted of thirteen (13) pages total, including the three (3) exhibits and cover pages. Plaintiff's submission (i) provided documentation evidencing his divestment of shares in Hamriyah Steel FZC, explaining that he "relinquished his shares in Hamriyah Steel FZC without pursuing compensation"; (ii) explained that he has no ongoing relationship with Hamriyah Steel FZC's owners; (iii) clarified that Hamriyah Holdings Limited held shares in Hamriyah Steel FZC; and (iv) confirmed that Hamriyah Holdings Limited was struck off of the Cyprus Companies Register on May 2, 2025.

35. In addition, Plaintiff's questionnaire response identified the ongoing harms Defendants' lengthy delay was contributing to, including "threatening [Plaintiff and his family's] housing; eliminating their access to banking and insurance; leaving them uncertain as to whether they will be able to pay for their children's education; and impairing their ability to satisfy their basic daily needs." Asserting that the circumstances giving rise to his designation no longer exist

10

due to his resignation, Plaintiff reiterated his request that his Petition be adjudicated as soon as possible.

36.    On September 24, 2025, Plaintiff's counsel submitted a letter requesting Defendants' expeditious adjudication of his Petition. The letter explained that Plaintiff had submitted his Second Questionnaire responses three (3) months prior, yet had not received any further communications from Defendants. Moreover, Plaintiff's submission reiterated that all of his "bank accounts have been closed and his family is struggling to make payments for their daily expenses, while subsisting on [Plaintiff's] rapidly dwindling cash savings."

37.    The letter further explained, again, that Plaintiff has been unable to satisfy the outstanding debt on his mortgage and automobile, and was therefore facing their imminent repossession. The letter provided: "[m]ost concerning, however, is [Plaintiff's] credible fear that he may soon be arrested and prosecuted in the UAE for failing to satisfy his outstanding debts." Finally, Plaintiff's submission stated: "[g]iven these concerns, [Plaintiff] respectfully requests that OFAC expeditiously adjudicate the petition for administrative reconsideration which has been pending since April 5, 2024." Plaintiff's September 24, 2025 submission consisted of a total of three (3) pages.

38.    Defendant OFAC confirmed receipt of the letter the same day, stating that, "[a]t this time, OFAC is [s]till adjudicating your client's case. Should we have further updates, we will reach out. Your continued patience is greatly appreciated."

39.    On October 13, 2025, Plaintiff submitted a second letter requesting a status update and notifying Defendant OFAC that he had received an eviction notice. The cover email explained that Plaintiff "has been informed that he will soon be evicted due to inability to satisfy his mortgage obligations as a result of his designation. Given the urgency, we are requesting that OFAC

expeditiously adjudicate the pending petition for administrative reconsideration." Specifically, Plaintiff's October 13, 2025 letter explained that he was notified by the Government of Dubai, Rental Disputes Center, that his residential apartment had been seized on September 22, 2025 for failure to satisfy payment, and that it would be sold at auction in fifteen (15) days. Plaintiff's submission totaled just eight (8) pages, including the two (2) exhibits and cover pages—i.e., original and translated copies of the Rental Disputes Center's notices.

40.     Defendants never confirmed receipt of the October 13, 2025 letter.

**E.      Third Questionnaire & Subsequent Communications**

41.     On November 14, 2025, Defendant OFAC issued another questionnaire ("Third Questionnaire") seeking responses to just three (3) questions regarding: (i) Plaintiff's savings and ability to cover personal expenses; (ii) any financial support Plaintiff has received from third parties; and (iii) Plaintiff's communications with the Cyprus Companies Register and status as the last registered director of Hamriyah Holdings Limited.

42.     Plaintiff provided his fulsome response to the Third Questionnaire on February 12, 2026. Specifically, Plaintiff explained (i) that he has relied on cash savings since designation; (ii) that he has occasionally received financial support from non-sanctioned friends in the UAE and Uzbekistan; and (iii) that he remains the last listed director of Hamriyah Holdings Limited, as the company has been struck off and thus no longer exists. Plaintiff's submission totaled just fifteen (15) pages, including the two (2) exhibits and cover pages.

43.     Defendant OFAC confirmed receipt of the Third Questionnaire responses on February 13, 2026, and stated that the agency would reach out if it had any additional questions.

44.     On February 19, 2026, Plaintiff's legal counsel sent an email to Defendant OFAC requesting that it expedite its consideration of Plaintiff's Petition. Specifically, Plaintiff's counsel

explained that Plaintiff "faces severe financial pressure due to his designation, notwithstanding that the circumstances underlying the designation have changed and his petition has been outstanding for nearly two years."

45.    Defendant OFAC responded on February 27, 2026, stating that: "OFAC is in the process of reviewing [Plaintiff's] February 12, 2026 questionnaire response. Please know that we appreciate the information you have provided in your previous submissions and will follow up when we have further updates on this matter. Your continued patience is greatly appreciated."

46.    Finally, on April 8, 2026, Plaintiff, through counsel, again contacted Defendant OFAC via email, explaining that nearly two (2) months had passed since Defendant OFAC's last communication on February 27, 2026, without any further update or indication of a timeline for a decision. Plaintiff further stated: "[a]s we have previously conveyed, [Plaintiff's] designation continues to cause significant hardship to him and his family, including severe economic difficulties arising from his inability to access financial services. We respectfully request that OFAC provide an update on the status of its review and the anticipated timeline for adjudication. Should OFAC require any additional information, we are prepared to respond promptly."

47.    Defendant OFAC responded on April 14, 2026, with familiar boilerplate language: "Please know that your client's request for reconsideration is currently under active review. Unfortunately, we are unable to provide a timeframe for final adjudication, but rest assured that this matter is receiving active attention. We appreciate the information you have provided in your previous submissions and will follow up if we have any additional questions."

48.    As of the date of this Complaint, Defendant OFAC has not adjudicated the Petition or issued another questionnaire, notwithstanding that Plaintiff has availed himself of Defendant

13

OFAC's administrative reconsideration procedures by submitting his Petition for removal from the SDN List and fully responding to Defendants' follow-up requests for information.

### F.    Plaintiff's Ongoing Harm

49.    Defendant OFAC's designation of Plaintiff—and its failure to adjudicate the Petition—has caused substantial harm to Plaintiff personally, professionally, and financially, tarnishing his reputation and upending his ability to conduct basic transactions to support his and his family's livelihood, a consequence that is especially grave as he is his family's only earner.

50.    Prior to his designation, Plaintiff served as the Chief Executive Officer of Hamriyah Steel FZC and held equity interests in the company. Plaintiff was required to resign from that position as a direct consequence of his designation, and subsequently relinquished his equity interests in Hamriyah Steel FZC without any compensation whatsoever. Since his resignation in February 2024, Plaintiff has been unable to obtain any form of alternative employment. No prospective employer in the UAE or elsewhere has been willing to hire an SDN-designated individual, as doing so would expose such an employer to the risk of its own designation under E.O. 14024. Plaintiff has thus been entirely without income for over two (2) years, a direct and proximate result of his continued designation.

51.    With no income and no access to formal financial services, Plaintiff has been forced to rely on rapidly dwindling cash savings to meet his family's most basic daily needs, all while feeling increasingly limited in doing so due to the digitalization of payments in both the UAE and Uzbekistan (such that more and more shops and service providers do not accept cash payments). As Plaintiff's savings have been exhausted, he has been compelled to seek the charity of close friends in the UAE and Uzbekistan to provide for himself and his family, including his wife and their three (3) children. As noted above, Plaintiff has no bank accounts as all accounts have been

frozen or closed as a result of his designation, and no UAE or international financial institution has been willing to open new accounts for him while he remains on the SDN List.

52. The financial consequences of Plaintiff's designation have been devastating to his family's housing and property. Plaintiff was unable to service the mortgage on the family's residential apartment in Dubai, and as a result, Plaintiff's family lives in constant fear of eviction and the apartment was seized by the Government of Dubai's Rental Disputes Center on September 22, 2025. Similarly, Plaintiff has been unable to satisfy the outstanding loan on the family vehicle, which faces imminent repossession. In addition, Plaintiff had been constructing a family home in the UAE prior to his designation, however, construction was halted as a direct result of the designation, leaving the property unfinished, and his family without the home they had planned to occupy.

53. Plaintiff's inability to access the financial system has also deprived him and his family of access to health insurance. Because Plaintiff cannot transact with financial institutions or satisfy insurance premium obligations, he has been unable to obtain health insurance coverage for himself or for any member of his family, including his three children. As a result, when Plaintiff, his spouse, or his children fall ill or require medical attention, Plaintiff is unable to obtain or pay for medical care, leaving his family entirely without medical coverage or recourse for the duration of his designation.

54. Lastly, but of immense importance to Plaintiff and his family, he is struggling to make payments for his children's education.

55. Furthermore, apart from the desperation of being unable to support his family, Plaintiff lives under a cloud of constant fear that he will be prosecuted by the authorities of the United Arab Emirates for his failure to satisfy his outstanding debts—including the defaulted

mortgage on the family apartment and the outstanding loan on the family vehicle. Plaintiff is unable to meet these obligations solely because of the financial paralysis inflicted by his SDN designation and Defendants' delay in adjudicating his Petition. This credible fear of prosecution adds a dimension of legal jeopardy to the already severe economic and personal harm Plaintiff has endured throughout the period of Defendants' unreasonable delay.

56.    Plaintiff's continuing designation also imposes significant and ongoing reputational harm. By being identified on the SDN List, Plaintiff is publicly branded—alongside terrorists, arms dealers, narcotics traffickers, and other malign actors—as a person whose conduct the United States has determined to be contrary to its foreign policy and national security interests. This is notwithstanding that Plaintiff resigned from the sole position that formed the basis of his designation—his executive role at a steel company in an allied country—more than two (2) years ago. As already noted, Plaintiff's designation significantly curtails his chances of employment, even though he is a third country national living outside of Russia, and without any links to Russia or Ukraine.

57.    Plaintiff's ongoing suffering is a direct result of Defendants' failure to adjudicate his Petition.

## CAUSE OF ACTION

### COUNT I

DEFENDANTS' FAILURE TO ADJUDICATE PLAINTIFF'S PETITION FOR ADMINISTRATIVE RECONSIDERATION CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

58.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

16

59. The APA provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further requires reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

60. Defendant OFAC's regulations expressly set forth the administrative reconsideration procedure through which Plaintiff submitted his Petition. 31 C.F.R. § 501.807. The regulation contemplates that Defendant OFAC will conduct that review and reach a determination in due course. Accordingly, Plaintiff seeks to compel a discrete agency action that Defendants are legally required to take; namely, adjudication of Plaintiff's Petition.

61. Plaintiff's Petition has been pending before Defendants for over two (2) years. Plaintiff has engaged with Defendants throughout that period, including by providing comprehensive responses to three (3) questionnaires. More than four (4) months have passed since Plaintiff's last substantive submission—his February 12, 2026 response to Defendants' three (3) question Third Questionnaire.

62. Defendants' delay is not justified by the complexity of Plaintiff's arguments for removal or the factual record. Plaintiff was sanctioned for his employment with Hamriyah Steel FZC. Plaintiff resigned from his employment with Hamriyah Steel FZC more than two (2) years ago on February 26, 2024. Defendants have been aware of these facts since at least April 5, 2024, and have received responses to all of their additional, clarifying, or corroborating questions. Defendants have repeatedly claimed that a decision will be made soon, but have thus far failed to adjudicate the Petition as they are legally required to do.

63. The interests prejudiced by Defendants' delay—i.e., Plaintiff's ability to work, to provide for his family, to manage personal financial affairs, to obtain health insurance and cover

17

his and his family's medical expenses, that is, to live normally and without constant fear of prosecution—are substantial. Absent relief under the APA, Defendants' failure to adjudicate the Petition will continue indefinitely, and Plaintiff will continue to suffer the consequences of his designation so long as Defendants persist in refusing to render a final decision on the Petition.

64.    Defendants' delay is unreasonable as a matter of law and constitutes agency action unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706(1) and § 555(b). Therefore, Plaintiff is entitled to an order compelling Defendants to issue a final determination on the Petition.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Issue an order compelling Defendants to promptly adjudicate Plaintiff's Petition for Administrative Reconsideration, dated April 5, 2024, within a date certain to be set by the Court;

B.    Retain jurisdiction over this action to ensure Defendants' timely compliance with any order entered by the Court, including by enforcing the date certain set for adjudication of Plaintiff's Petition;

C.    Award Plaintiff his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

D.    Grant such other and further relief as the Court may deem just and proper.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW

Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Attorney for Plaintiff*